## SUPREME COURT.

### The Rock River Bank agt. Francis A. Hoffman and others.

*It seems,* that the state courts have no jurisdiction of an action against a firm to recover a firm debt, where one of the members of the firm is a *foreign consul.*

Where an action was commenced against the firm of H., G. & Co., and H. was a foreign consul duly recognized by the United States government, and acting as such at the time of the commencement of the action, and a motion having been made to dismiss the action on the ground that the court had no jurisdiction, dur- ing the pendency of which motion the *exequatur* or recognition of the consul was withdrawn by the U. S. government,

*Held,* that the court takes jurisdiction from the time of the revocation without pre- judice to the previous proceedings, and that the motion must be denied.

*New York Special Term, December,* 1861.

This action was commenced against the firm of Hoffman, Gelpcke & Co., bankers, doing business in Chicago, Illinois, to recover a firm debt. Moneys belonging to the firm were attached in New York, and service made by publication, after which the defendants appeared generally in the action, and made a motion to dismiss the complaint and vacate the attachment on the ground that one of the mem- bers of the firm, Hoffman, was a consul for the Grand Duchy of Saxe Coburg Gotha, duly recognized by the gov- ernment of the United States.

The motion coming on for a hearing, it was proved by the affidavit of one of the defendants, that Hoffman was, at .the time of the commencement of the action and the exe- cution of the attachment, a consul, duly recognized as rep- resented.

In opposition, the following correspondence was read on behalf of the plaintiff, which, it was admitted, had taken place since the motion had been noticed.

Rock River Bank agt. Hoffman.

NEW YORK, *Aug.* 10, 1861.

To the Honorable the Secretary of State of the United States:

In behalf of an incorporated bank, for which we are the attorneys in the proceedings mentioned hereinafter, we respectfully beg leave to call your attention to the following facts, and to ask your interposition to the end that we, as well as other citizens of the United States, may not be defrauded of our rights. Our client, an ordinary banking corporation, for the convenience of their business, have kept an account in Chicago with the firm of Hoffman & Gelpcke, who are bankers in that city. On or about March 1st last, the bank had on actual deposit with Hoffman & Gelpcke, a little more than the sum of $7,500, which they, on demand, refused to pay. It was then understood that Hoffman & Gelpcke were somewhat embarrassed in their affairs, and therefore the bank, learning that the firm had funds in the city of New York, instituted an action in the New York supreme court, to recover the money due it, and attached moneys in other banks here, to an amount sufficient to pay a portion of their demand. There were prior attachments issued out of the same court against the same defendants, and moneys attached in the same manner. The firm of Hoffman & Gelpcke is composed of Francis A. Hoffman, Otto Gelpcke and Alexander Seller. These defendants, admitting that they had no defence on the merits to the action, now move to vacate the attachment and dismiss the proceedings, on the ground that the state court has no jurisdiction of actions against them, for the reason that one of the firm, Hoffman, is consul for the Grand Duchy of Saxe Coburg Gotha. This motion came on for hearing before the court, on the 13th instant, but for the purpose of gaining time to communicate with your department, a technical objection was raised which had the effect to postpone the hearing to the 20th inst.

In view of these facts, and in behalf of our client, we wish, therefore, to ask your interposition in our favor, and

for the following reasons. The court of appeals in this state, our highest judicial tribunal, in the case of *Valarino* agt. *Thompson & Mason.* (3 *Selden's N. Y. Reports,*) with which your honor is undoubtedly familiar, have said that where a firm is sued, a member of which is a foreign consul, the state courts have no jurisdiction, and the action can not be sustained. This theory, without going into the reasons of it, is attempted to be sustained upon the grounds, that it is the privilege of the government to have all the persons whose relations are official with the government, tried in its own courts, and that, by virtue of the relation, all persons connected with the consul are of necessity brought into the United States courts, and the state courts ousted thereby of jurisdiction as well as against all the parties connected with the consul as the consul himself. This theory seems to us to be untenable, but without stating our reasons, we wish to call your attention to the further proceedings in the same case of *Valarino* agt. *Thompson & Mason.*

That was an action commenced against the firm of Mason & Thompson, Thompson being a foreign consul, to collect a firm debt. After the decision of the court of appeals, before alluded to, an action was commenced in the U. S. district court against Thompson alone, on the same cause of action ; the defendant Thompson interposed a plea to that suit, that there was a non-joinder of parties, the contract being a joint one, and Mason, Thompson's partner, not being joined as a defendant. That plea was demurred to on the part of the plaintiff, and held bad, the U. S. district court holding that they had no jurisdiction over the firm, or over Mason either individually or joined with Thompson. Thus your honor will perceive that the U. S. courts and our state courts directly conflict in their opinion, and that the effect would be, in our case, to prevent the collection of our debt in any court, and defraud the

plaintiff out of his honest due, and entirely shield the firm, of Hoffman & Gelpcke from any liability whatever.

The same decision has been rendered in the U. S. district court here, in many other cases.

We respectfully represent, therefore, that Hoffman is guilty of a very great perversion of his privileges as consul, and one which this government, exercising due care over the rights of our citizens, ought not to permit. And we would submit, that the only way to prevent these abuses and to prevent others, is to revoke the *exequatur* of this consul. This would secure the rights of these citizens as well as those of others, and prevent a great wrong. We do not expect that such a course will be taken without some notice to the consul, or without due proof of the facts we here state; but if the government consider that some action should be taken, then we think time may be obtained to present these matters in a more authentic form without impairing the interests of our clients.

We respectfully therefore ask, that we may receive from you some intimation of what course the government will pursue, in order that the matter may be presented to the court on the 20th.

Yours, respectfully,
ANDREWS, COLBY & THOMPSON,
per Geo. R. Thompson.

DEPARTMENT OF STATE, }
WASHINGTON, *August* 15, 1861. }

GENTLEMEN—Your letter of the 14th instant has been received, and in view of the unwarrantable use made by Mr. Hoffman of his official position as consul of the Grand Duchy of Saxe Coburg Gotha, for Illinois, information concerning which had reached the department from other quarters before the receipt of your communication, I have deemed it proper to revoke his *exequatur* until he shall have furnished to the department satisfactory explanations

upon the subject. A copy of the letter which has been addressed to him to-day, is hereunto enclosed.

I am, gentlemen,

Your obedient servant,

F. W. SEWARD,

*Assistant Secretary of State.*

To Messrs. ANDREWS, COLBY & THOMPSON, 47 Wall street, NewYork.

DEPARTMENT OF STATE, }
WASHINGTON, *August* 15, 1861. }

SIR—Reliable information having been received at this department, that you have made use of your official posi-, tion to defeat the ends of justice, in a suit brought to reco- ver a debt due by the mercantile firm of which you are a partner, you will consider your *exequatur* as consul of Saxe Coburg Gotha, for the state of Illinois, revoked until sat- isfactory explanations upon the subject shall have been received.

I am, sir, your obedient servant,

F. W. SEWARD,

*Assistant Seretary.*

To FRANCIS A. HOFFMAN, Esquire, Consul of Saxe Coburg Gotha, Chicago, Illinois.

G. DEAN and BERNARD ROELKER, *for the motion, argued:*

I. A state court has no jurisdiction of an action against a firm for a firm debt, of which firm a foreign consul is a a member. (*Valarino* agt. *Thompson,* 3 *Seld.,* 576 ; *Judi- ciary act of* 1789, 2 *Bioren & Duane's Laws,* 56 ; *Act of Con- gress of* 1789, *ch.* 20, *sec.* 9 ; *U. S. Const., art.* 3, *sec.* 2.)

CHAS. W. PRENTISS and GEO. R. THOMPSON, *in opposition, argued :*

I. The special privilege having ceased to exist by the revocation of the *exequatur*, although it ceased pending the motion, the court has complete jurisdiction over Hoffman. Privilege, in general, is disliked by the law, and where it

Rock River Bank agt. Hoffman.

is an ephemeral, anomalous *status* or condition of one of three defendants, over two of whom the court has an acknowledged jurisdiction, if disconnected with the third, and also over the third, the court has a perfect jurisdiction, independent of the interposition of the privilege. The court will gladly lay hold of the first opportunity, when it can rightfully push aside this exclusive monopolizing privilege, which is thrust in evidently not to advance, but to thwart the ends of justice. That it is a wanton act, designed to turn round the plaintiff to another suit, and defeat $8,000 of security, by attachment of that amount of money in bank in New York, which the plaintiffs now fortunately have, is obvious. And what " better writ" does the defendant give ? The plaintiffs may bring a suit against this insolvent partnership in Illinois, in the U. S. district court, by process in the ordinary way, without obtaining a cent of security, and obtain, doubtless, by default, a fruitless judgment. For there is no pretence of defence. The defendants have already answered in one of these cases, and all that that answer contains, is a repetition of the matter of the motion—the privilege—as consul of Saxe Coburg Gotha—although we have a threat from the counsel of the defendants, that Hoffman's privilege as consul of several other governments or towns will be interposed by motion or answer, if the court think the *exequatur* being revoked is sufficient for our purpose, so far as Saxe Coburg Gotha is concerned. The court will presume that the U. S. government have done right in revoking the *exequatur* of Hoffman. This courtesy is due from the judiciary of a state to the executive of the United States, and particularly where the act is to prevent a defeat of the jurisdiction of the state judiciary.

Every presumption is in favor of the jurisdiction, as the court has the combined jurisdiction, with the exception of the portion given to the United States courts, of all the courts of Westminster Hall.

The property attached is in New York. The territorial jurisdiction of this state and of its courts is over it. There is a general jurisdiction of the person of Hoffman the moment he appeared. Now, admitting he was a full, acknowledged consul, with the *exequatur* in his hands when the attachment was levied and the appearance made by him, the *exequatur* being revoked since, and that fact appearing on the hearing of the motion, cause is thereby shown why the attachment should not be dissolved and the suit dismissed ; for this is the privilege of the U. S. government. So *Valarino* agt. *Thompson* decides, and they can waive it, and they only, according to that case ; but if it be the privilege of Hoffman, he does not waive it, it is true ; but it is taken from him, for it is of no consequence that Hoffman has an appointment from a foreign government, unless that appointment is recognized by ours. The only evidence, indeed, of his appointment, is the *exequatur*. The moment the *exequatur* is taken away, Hoffman is stripped of his peculiar defence. He stands like any other man, and, having appeared, the court instantly obtains jurisdiction over him—having a general jurisdiction before, and the peculiar exemption not being shown.

" If the defendant plead an outlawry in the plaintiff in disability of his person, and the plaintiff after that plea pleaded purchase of a charter of pardon ; because the charter hath restored him to the law, the defendant shall answer. *So note, the disability abateth not the writ, but disableth the plaintiff until he obtaineth a charter of pardon, and so it appeareth here by Littleton."* (*Coke on Litt.*, 3d vol. 128 *b.*)

No matter that it formerly and recently existed ; the question is, can he show it now ? He has never shown it before to this court. This is the first time the question ever came up for hearing or proof. (*Le Bret* agt. *Papillon*, 4 *East,* 502 ; *Hall* agt. *Young, see* 3d *Pickering's R.*, 80 ; *Hutchinson* agt. *Beach, see* 11, *Mass.,* 119.)

It will not do to say that the court had no jurisdiction when the motion papers were served.  That is not true, for there was no objection to the jurisdiction apparent on the record; and where it is *dehors* the record, it is matter of proof; it might not be proved; or it might not be urged or suggested; or it might be expressly waived.  (*Waiver of Privilege*, 4 *McCord*, *S. C.*, 79.)

In any of these cases the judgment would be good, although in fact the defendant was consul; so that really it is an unsound proposition to say that the court had no jurisdiction when the appearance was made.  In order to make out that the court had no jurisdiction, then it must appear that a good objection existed on the face of the record, or had been determined to be a good one by the court, on the law and fact.

A plea of coverture must allege the *continuance of the coverture*, otherwise it is frivolous, as it might give a " better writ."  (*Mitchum* agt. *Droze*, 11 *Rich. S. C. R.*, 198.)

Suppose coverture or infancy of the plaintiff at the time of the suit brought; if before the issue on a plea bringing this to the notice of the court, it ceases to exist, and this fact also is properly brought to the attention of the court, will there be any ground for a declinatory exception ? (*Kearney* agt. *Green*, 13 *Illinois R.*, 432 ; *Smith* agt. *Kernochan*, 7 *How. U. S.*, 198.)

Take the alien enemy case in *McCord's Reports*.  Here, after suit brought, two events supervened ; 1st, war ; 2d, peace.  There was a plea, *puis darien continuance*, of the war, to which there was a replication.  The suit continuing on, peace occurred, and the court gave leave to the plaintiff to withdraw the former replication, and reply the peace.

So, if an attorney has a privilege of being sued in a particular court, if he ceases to be attorney after suit brought, is the objection still available ?  The truth is, and so the cases will establish, if the objection is something

exceptional, and not permanent, like a temporary exemption from arrest, a mere special and personal privilege, the moment it ceases to exist the objection ceases.

II. Which court has jurisdiction over this case? The state or United States court?

In order to make it out that the U. S. court has jurisdiction, it must appear to be " a case affecting a consul." Where is the proof of this? If our proof goes for nothing, and the case stands on the defendant's affidavits, he has not shown that he is a consul. He produces his partners' affidavit; what is this but hearsay? Even his own affidavit would be subject to the objection of not being the best evidence. The best evidence would be the commission from his government, and the *exequatur* of ours. He has moved upon neither, and is entitled to offer neither in evidence; and if he seeks to defeat the jurisdiction of a court of general jurisdiction, by the way a court of much higher and more general jurisdiction than the United States district court, by a sharp technical objection, he must, on every wholesome principle, be held to make it out strictly.

But if he is consul, where is the proof that this is a case affecting him? The attorney swears that the property of the defendants is attached. There are three defendants. Now this is just as consistent with the fact that Hoffman's property is not, nor any interest of his in the joint property is attached, as that it is; it would be the defendants', if the other. 2d. The defendants' attorney's statement is either mere hearsay from what his clients have said; or most likely founded on the warrant of attachment, which is like all other warrants of attachment, general. Again, *non constat* that any property whatever is attached; there is not a particle of proof of it; no return of sheriff, nor any other proof.

All the affidavit of defendant states is, that " a warrant has issued of attachment against the property of the defendants, and that property has been attached in this city,

under said warrant, to wit: in the American Exchange Bank and the Chatham Bank of this city."

Now, it does not appear that any warrant of attachment was issued in this action at all. Will the court supply this defect in the affidavit, in order to oust its own jurisdiction, and defeat the just rights of its own citizens in favor of persons out of the jurisdiction?

III. Now does this case affect Hoffman, if no property has been attached, or interest in property of his? Let him wait until some is attached, or threatened at least. No personal judgment is claimed against Hoffman; that is, if he is really found by the court to be consul. And is this affecting a consul, if he appears merely to disappear?

There is not to be found anywhere a case decided, where a consul was joined in a suit with another joint contractor. The case of *Valarino* agt. *Thompson*, (3 *Seld.*,) is a case of joint contract, to be sure, but only Thompson, the consul, was served. It has never yet been decided by any court, that there is jurisdiction in the United States courts over any but the consul. The expressions to the contrary in *Valarino* agt. *Thompson*, are purely *obiter;* not called for by the case, and only the sentiments of the particular judge delivering the opinion, it is fair to presume, and so no authority. The rule in all the books is, if a privileged party joins with an unprivileged party in a contract, and so is joined in a suit, the privilege does not exist. It is so, where an attorney, freeholder, or person entitled to be sued in the county of his residence, joins with one not entitled to the privilege. The attorney need not then be sued in his own court; the freeholder is liable to arrest, and the resident of a given county is liable to be sued in another county. (*Fife* agt. *Keating*, 2 *Brown, Penn.*, 135.)

(a.) A plea in abatement by two, of matter personal to one, is bad. (*Shannon* agt. *Comstock*, 21 *Wend.*, 457.)

IV. May it not be said with truth, that the constitution, which was made by wise men, deeply imbued for the most

part in the knowledge of the common law rules, and with a direct view to them, did not intend to give this privilege of being sued in the U. S courts in case of joint contract where one was consul only. ( *White* agt *Smith*, 4 *Hill*, 166.)

(a.) After receiving plea in abatement, of pendency of former action before replying, plaintiff pays the costs of former suit, this payment relates back to an order of discontinuance entered before second suit brought, and is a good answer to the plea.

V. It is certainly true as a universal proposition, unless this is an exception, that privilege never extends to an unprivileged person ; and there is good reason to say, that when a consul descends, if it is a descent, to the level of a common person, and joins habitually and chronically with other partners in an extensive mercantile or other business, he loses his exclusive exemption—his sacred character—that is, his resemblance to an ambassador, which in any view is very slight—as even the state governments, as has been held by the U. S. supreme court, lose their prerogative rights if they become stockholders in a bank.

This is certainly a strong instance of merger, of the constructive power of a court, to take away the distinctive character of a sovereign state—the governmental function—and sink it into an undistinguishable mass, and put it on a level with the humblest citizen of the land. And this was done for what purpose ? Simply to sustain the jurisdiction of the court, and that, too, a court of " limited jurisdiction."

(a.) See *Bank of United States* agt. *Planters' Bank of Georgia*, (9 *Wheaton*, 904.) " It was considered a sound principle that when a government becomes a partner in any trading company, it divests itself, *so far as concerns the transactions of that company*, of its sovereign character, and takes that of a private citizen. Instead of communicating to the company its privileges and its prerogatives, it descends to a level with those with whom it associates

itself, and takes the character which belongs to its associ-
ates, and to the business which is to be transacted."

VI. Although the language of the constitution is strong,
giving jurisdiction in all *cases* affecting consuls, and the
act of congress is, all *suits* against consuls, yet the absence
of any case in which the U. S. courts, since the foundation
of the government, have actually taken jurisdiction of any
co-contractor in conjunction with a consul, speaks loudly
against the right to take such jurisdiction. And the legis-
lation of congress, in the 11th section of the judiciary act,
and in the act of 1839, limiting the jurisdiction of the court
to the case of inhabitancy in the district where the suit is
brought, or finding the party and serving him there, unless
the party voluntarily appears, and adopting the feature of
our joint-debtor act by allowing the suit to go on by ser-
vice of one joint contractor, shows that the federal courts
have been obliged to obtain the aid of statutes which exist
probably in every state of the Union, and have existed
here ever since 1789, which to some purposes make joint
contracts joint and several, but without in any manner
being obnoxious to the charge of going counter to the pro-
vision in the U. S. constitution inhibiting the passage of
any law by a state impairing the obligation of contracts.
(*Conklin's Treatise on Jurisdiction of U. S. Courts*, 3d ed.,
*pp.* 152, 153, 154.)

But instances exist, late and early, where the U. S. dis-
trict court have held on a plea of non-joinder of a co-con-
tractor, not a consul, that the plea should be overruled.

All the parties having appeared in the case, the order of
publication, and its execution, are out of the question, as
substituted service disappears as soon as original or pri-
mary service, or its equivalent, exists in the case—that is,
appearance—and as the consul only appears to answer to
the fact that the court has no jurisdiction over him, if the
court find as a fact that he is still consul, he must disap-
pear from the case, except it may be said of him that " *stat*

Rock River Bank agt. Hoffman.

*nominis umbra.*" His *name* may remain with no jurisdiction over *him*, and so the record should show.

Then where do we stand? Why, upon the principle of the joint-debtor act—upon the principle on which the U. S. district court and circuit court act, of the act of congress of 1839—there is no service of any kind, primary or secondary, upon the consul, nor can be—no equivalent service; the thing is impossible, as the court has no jurisdiction of his person. The cause may then go on, and a judgment go actually against the other joint contractors, but only in name against the consul.

To test this jurisdictional question : Suppose in the case of *Valarino* agt. *Thompson,* now pending against Thompson alone in the U. S. district court of this district, the case finally determined by judgment against Thompson, but the judgment being uncollectable, a remedy is sought against the other joint contractor, Mason; where should the suit be brought? in the U. S. district court? Is the suit against Mason a suit affecting or against a consul? No. How, then, could there be jurisdiction? If, then, the suit must perforce be brought in the state court, we have necessarily the case of a state and federal court having jurisdiction, one of one joint contractor, and the other of the other. (*Shirley* agt. *Shattuck,* 13 *Met.,* 256; *U. S.* agt. *Girault,* 11 *How. U. S.,* 22; *Smith* agt. *Harris, Ill.,* 12.)

What is there in the constitution of the United States, or acts of congress, or state laws, to oppose this result? If nothing—if on the contrary, the joint-debtor act and act of 1839 of congress, both lead to this result, why may not, and should not, this court take jurisdiction of the other two joint contractors besides Hoffman? By the 34th section of the judiciary act (of congress) of 1789, the laws of the several states are to be regarded as rules of decision; so the joint-debtor act seems to be recognized. *Shute* agt. *Davis*—citing *Craig* agt. *Cummings*—(*Peters' C. C. R.,* 431,)

where Pennsylvania practice is adopted as to joint contractors. (*D'Arcy* agt. *Ketcham*, 11. *How.*, *U. S.*, 165.)

And see as to how far the court will go to sustain their jurisdiction. (*Connolly* agt. *Taylor*, 2 *Peters' Rep.*, 565; *Dunn* agt. *Clark*, 8 *Peters*, p. 1; *Thomas* agt. *Newton*, *Peters' C. C. R.*, 444.)

As to waiver. (*See Gracie* agt. *Palmer*, 8 *Wheaton*, 699; *Clearwater* agt. *Meredith*, 21 *How. U. S. R.*, 489; *Harker* agt. *Brink*, 4 *Zabriskie*, *U. S.*, 333; *N. J. act*; *West* agt. *Randall*, 2 *Mason's R.*, 181–190.)

An action may be commenced in the superior court of the city, where one of the defendants or joint contractors resides in the city. (*People* agt. *Superior Court*, 19 *Wend.*, 119; *White* agt. *Smith*, 4 *Hill*, 166; *S. P. Shields* agt. *Barrow*, *J. Curtis' opinion*, 17 *How. U. S. R.*, 130.)

Again, the court may regard this ephemeral *status* of the consul like infancy, insolvency, bankruptcy, and the like, and let out the consul.

Again, substantially, the action is for a tort for refusing to pay over money which the defendant received and retained under a fiduciary relation. (*Suigert* agt. *Graham*, 7 *B. Monroe R.*, 661; *Hatfield* agt. *Bushnell*, 1 *Blatch. C. C. R.*, 393.)

But has there really been any difficulty in an action against joint contractors, on technical grounds—and all the defendant's grounds here are of the purest technical kind—in taking jurisdiction of one or more joint contractors, where another, or others, resided out of the state, out of the jurisdiction of the government and its judiciary? Is it not fundamentally and familiarly right, by every day's practice, independent of any statute? The court having jurisdiction of the property, and having attached it on the warrant it has issued, all the defendants being non-residents and out of the state, has it not a right to take jurisdiction of those who appear, *and remain* by a legal appearance?

Is it any greater anomaly for this court to take jurisdiction of the two joint contractors, if indeed they are such, besides Hoffman, and not of him also, than occurs every day under our joint-debtor act and under the act of congress of 1839 ?   And is not this state of things inherent in the very nature of business and business relations, and particularly liable to occur in this country, where there are so many states so closely—at all events heretofore—connected? Instead of being an anomaly, is it not, after all, an inevitable and normal state of things, provided for by the statutes of the United States and of every state of the Union?

VII. If this question, in either aspect of it, is doubtful, it is a sufficient answer to the motion.   The motion should never be allowed to prevail, unless a " *better*" writ is given. (*Stanley* agt. *Barker*, 25 *How. R.*, 507.)

Courts have always acted upon this ground, and particularly courts of the highest jurisdiction, like the supreme court of the state.   As long as it must be said, to say the least, to be doubtful about the jurisdiction of the U. S. district court extending to others besides the consul, and that court is, although not an inferior court, yet a court of "*limited* jurisdiction," it is the duty of this court to retain its jurisdiction over the property attached, and persons of two other parties besides Hoffman.

And even if the court, in opinion, should incline against us on every ground in the case, it would be the duty of the court not to dismiss the suit and dissolve the attachment by a summary hearing on motion, but let it be more deliberately decided, as it is the only issue in the case, and is almost exclusively a question of law—and as, if the motion prevails, we are without remedy, the attachment being dissolved.

SUTHERLAND, Justice.   The motion must be denied, with ten dollars costs to abide the event of the action.